UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Bonnie W., | Civ. No. 21-428 (BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

---

Peggy L. Stevens, Esq., counsel for Plaintiff.

Kizuwanda Curtis, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 18, 20.) For the reasons detailed below, the Court concludes that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record. Therefore, Plaintiff's motion is granted in part, Defendant's motion is denied, and the case is remanded to the ALJ for further proceedings consistent with this Memorandum Opinion and Order.

## DISCUSSION

After a hearing on the matter, the ALJ denied Plaintiff's application for disability benefits on July 16, 2020, which became the final decision of the Commissioner on January 7, 2021. (Tr. 1–4, 21–22.)[1] At step two of the analysis,[2] the ALJ found Plaintiff suffered from one severe impairment: multiple sclerosis ("MS"). (Tr. 12.) The ALJ then concluded that Plaintiff's MS did not meet or equal any listing within the Listing of Impairments ("listings"). (Tr. 13–14.) Next, the ALJ determined Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) except use a single cane for ambulating distances more than 50 feet; occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; could have only brief and intermittent exposure to temperatures over 80 degrees and must avoid temperatures over 90 degrees; must avoid concentrated exposure to wetness and to cold; and must also avoid concentrated exposure to hazards, such as machinery and unprotected heights.

---

[1]   Throughout this Memorandum Opinion and Order, the abbreviation "Tr." is used to reference the administrative record. (Doc. No. 17.)

[2]   The ALJ issued his decision following the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ examines whether the claimant has engaged in any substantial gainful activity. At step two, the ALJ considers the claimant's impairments and determines whether they have any severe medically determinable impairments. At step three, the ALJ compares any severe impairments found to the Listing of Impairments to assess whether the claimant's impairments meet or equal one of the listed impairments. Before moving to step four, the ALJ will determine the claimant's residual functional capacity ("RFC"). At step four, the ALJ uses the RFC to determine whether the claimant can perform their past relevant work. At step five, the ALJ considers whether the claimant can perform other jobs given their RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)–(g).

(Tr. 15.) Considering the RFC and the testimony of the vocational expert, the ALJ found that Plaintiff could perform her past relevant work as a police dispatcher. (Tr. 21.) Accordingly, the ALJ concluded that Plaintiff is not disabled. (Tr. 21.)

The Commissioner's decision will be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Substantial evidence in the record may support two conflicting outcomes, creating a "zone of choice" in which the ALJ may exercise discretion to grant or deny benefits. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). This Court will not overturn an ALJ's determination if it falls within that zone, "even if we might have weighed the evidence differently." *Id.* (citations omitted). However, "the substantiality of the evidence must take into account whatever fairly detracts from its weight, and the notable distinction between 'substantial evidence' and 'substantial evidence on the record as a whole,' must be observed." *Bauer v. Soc. Sec. Admin.*, 734 F.Supp. 2d 773, 799 (D. Minn. 2010) (citations omitted). This test requires "more than a mere search of the record for evidence supporting the Secretary's findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).

Plaintiff argues that the ALJ failed to properly consider her fatigue in his review of the listings at step three and in his RFC determination prior to step four. (Doc. No. 19, Pl.'s Mem. 13, 23–25.)

Throughout Plaintiff's medical records, she consistently reported fatigue symptoms and her health care providers expressed concerns about her fatigue. During various 2017 appointments, Plaintiff reported tiredness and fatigue that exacerbated her mental and physical condition. (*See* Tr. 308, 344, 348.) For example, she reported "higher level cognitive symptoms," as well as "leg weakness, spasticity and balance issues" that were worse with fatigue. (Tr. 308, 348.) At her visit with Dr. Kristine Spiewak in November 2017, Dr. Spiewak expressed additional concerns about Plaintiff's fatigue and suggested Plaintiff leave her job. (Tr. 35, 348.) Fatigue is consistently recorded as a residual and progressive symptom of Plaintiff's MS throughout her 2018 and 2019 medical records by Dr. Spiewak, Dr. Adam Carpenter, and Dr. Dustin Warner as well, even after she left her position as a police dispatcher. (*See* Tr. 314–315, 352, 353, 360, 383, 400, 410, 424, 425 428, 429, 447.) For example, she again reported "higher level cognitive symptoms" when fatigued as well as heavy fatigue from walking. (Tr. 352–53.)

These concerns about Plaintiff's fatigue are corroborated throughout Plaintiff's statements at the hearing, Plaintiff's application, Plaintiff's various function reports, and the third-party statements provided by Plaintiff.[3] (*See* Tr. 38–41, 43, 45, 47, 227, 246, 252, 257, 258, 290, 294, 295, 296, 300.) For example, during the hearing, Plaintiff explained that she had to go through retraining after making mistakes on the job despite no changes to the procedures or systems used. (Tr. 40–41.) She also explained, "I was

---

[3]   Plaintiff submitted ten third-party statements for consideration. The Court rarely sees such support for a Plaintiff's case. Additionally, it is rare to receive letters from co-workers, let alone a high-ranking public figure like the Commissioner of Public Safety.

exhausted. I wasn't performing the job like I had been." (Tr. 38.) The third-party statements also demonstrate Plaintiff's fatigue. (*See* Tr. 288, 290, 294, 295, 296, 300.) One of Plaintiff's former co-workers of twenty-five years explained that "[Plaintiff] needed to leave early in order to get enough sleep. . . . The stress of the job, the long hours and fatigue started to affect her physically." (Tr. 294.) Plaintiff's friend of thirty-five years explained that "[i]t is not uncommon for [Plaintiff] to have to re-schedule an outing due to being too tired." (Tr. 296.) Commissioner John Harrington, Minnesota's Commissioner of Public Safety and former Sergeant of the St. Paul Police Department, also noted that

> [Plaintiff's] MS also has affected her ability to maintain regular working hours and I recall that she was often tired and stressed due to her condition. . . . [MS] has directly impacted her ability to perform the duties of a dispatcher . . . .

(Tr. 300.) In addition to submitting the above-referenced evidence, Plaintiff's counsel spent substantial time in her opening and closing remarks at the June 30, 2020 hearing highlighting Plaintiff's fatigue as a reason for her leaving her job and why she cannot return to work. (Tr. 33, 34, 54.)

Despite the extensive record on fatigue and focus on it at the hearing, the ALJ never mentioned Plaintiff's fatigue within his step three analysis.[4] At most, the ALJ

---

[4] Generally, an ALJ's failure to explicitly discuss particular evidence in their conclusion at step three is not a reversible error if their conclusion is supported by the record. *See Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion."). In similar cases, courts within this district have found that a failure to discuss fatigue at step three was not a reversible error for this reason. *See Sara A.S. v. Saul*, No. 19-CV-1293 (JNE/ECW), 2020 WL 5505928, at *21 (D. Minn. July 30,

mentioned that Plaintiff "reported being able to pay attention for 2-3 hours if not tired." (Tr. 14.) The listings themselves confirm that fatigue is a symptom of MS that needs to be considered at step three:

> Fatigue is one of the most common and limiting symptoms of some neurological disorders, such as [MS], post-polio syndrome, and myasthenia gravis. These disorders may result in physical fatigue (lack of muscle strength) or mental fatigue (decreased awareness or attention). When we evaluate your fatigue, we will consider the intensity, persistence, and effects of fatigue on your functioning. This may include information such as the clinical and laboratory data and other objective evidence concerning your neurological deficit, a description of fatigue considered characteristic of your disorder, and information about your functioning. We consider the effects of physical fatigue on your ability to stand up, balance, walk, or perform fine and gross motor movements using the criteria described in 11.00D. We consider the effects of physical and mental fatigue when we evaluate your physical and mental functioning described in 11.00G.

20 C.F.R. § 404, subpt. P, app. 1 § 11.00(T). Here, the ALJ failed to make any mention of Plaintiff's fatigue and how it may affect her functioning, even though the record is replete with references to Plaintiff's fatigue.

---

2020), *report and recommendation adopted by* No. 19-CV-1293 (JNE/ECW), 2020 WL 5500429 (D. Minn. Sept. 10, 2020), *aff'd sub nom. Schmitt v. Kijakazi*, 27 F.4th 1353 (8th Cir. 2022). Additionally, "a reviewing court should evaluate an ALJ's analysis in light of the entirety of his or her decision." *Elizabeth A. v. Saul*, No. 20-CV-744 (HB), 2021 WL 931211, at *6 (D. Minn. Mar. 11, 2021). As further explained below, the ALJ's discussion on fatigue is inadequate throughout his decision, despite the extensive record on fatigue. The Court cannot conclude that the record supports the ALJ's overall conclusion due to this inadequacy. *See Shearer v. Saul*, No. 20-05031-CV-SW-MDH-SSA, 2021 WL 2936485, at *8 (W.D. Mo. July 13, 2021) ("[T]he Eighth Circuit has held that remand is required where it cannot be determined if the ALJ properly considered the record."); *see also Willcockson v. Astrue*, 540 F.3d 878, 879–80 (8th Cir. 2008) ("[W]e conclude that we must remand because we cannot determine from the written decision whether the ALJ properly reviewed the evidence."). Therefore, the ALJ's failure to address fatigue at step three, and within the decision as a whole, is a reversible error.

6

The ALJ also failed to adequately address Plaintiff's fatigue in his RFC determination. RFC is a measure of "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). When determining a claimant's RFC, the ALJ will consider their impairments as well as any related symptoms, such as fatigue.[5] *Id.*; 20 C.F.R. § 404.1529. Fatigue is not reflected in the Plaintiff's RFC and the ALJ's explanation regarding his RFC determination does not show that he considered it. Instead, the ALJ first made a generic statement about considering all symptoms, without specifically discussing fatigue. (Tr. 15.) Then, the ALJ went on to briefly mention some of Plaintiff's reports related to fatigue without discussing any potential limitation on her functioning. (Tr. 15, 19.) Next, the ALJ found, without specifically considering fatigue, that Plaintiff's symptoms are consistent with MS, but inconsistent with the rest of the record. (Tr. 15.) The ALJ then briefly considered Plaintiff's reported cognitive issues when discussing mental impairments, but never mentioned fatigue in this discussion. (Tr. 17.) Within the decision, the ALJ never discussed any of the factors for evaluating symptoms like fatigue and how it may affect Plaintiff's functioning. He only made conclusory statements without explanation. Moreover, the ALJ never addressed the third-

---

[5]   To evaluate a claimant's symptoms, the ALJ will consider the following factors, commonly referred to as the *Polaski* factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications taken to alleviate symptoms; (5) other treatments for symptoms; (6) other measures used to alleviate symptoms; and (7) other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3); *see Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

party statements about fatigue. He only generically stated that the statements were considered. (Tr. 20.)

In summary, there is nothing within the RFC or the ALJ's explanation that indicates to the Court that fatigue was properly considered when determining Plaintiff's functional limitations. Instead, the ALJ mentioned fatigue briefly at points and completely overlooked the majority of the record on fatigue without explanation. The ALJ did not explain sufficiently why fatigue does not affect Plaintiff's RFC. The failure to properly address Plaintiff's fatigue requires remand.

Therefore, this Court concludes the ALJ erred by failing to adequately consider the extensive record on Plaintiff's fatigue in his decision, particularly at step three and within his RFC determination. The Court cannot conclude that the ALJ's decision is supported by substantial evidence in the record as a whole when a substantial piece of the record was ignored in that decision. On remand, the ALJ must reconsider step three and consider Plaintiff's fatigue along with the rest of the record.[6]

---

[6] The Court remands for reconsideration of Plaintiff's fatigue starting with step three. Nothing in this Order would preclude the ALJ from more fully developing the record on this issue if the ALJ determines a fuller record is needed. Because of this option available to the ALJ on remand, the Court need not address Plaintiff's argument that the ALJ did not fairly and fully develop the record here. (Pl.'s Mem. 22–23.)

Plaintiff also argues that other limitations within the RFC were erroneous because the ALJ disregarded Plaintiff's treating physicians' opinions and only based his determination on medical records without another medical opinion for support. (Pl.'s Mem. 16–17.) Because the Court remands this case back on step three on the narrow issue of fatigue, it need not address other concerns with the ALJ's RFC determination at this time. Nothing in this Order would prevent the ALJ from seeking additional medical review or reweighing opinions already within the case upon remand.

8

**ORDER**

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 18) is **GRANTED IN PART**;

2. Defendant's Motion for Summary Judgment (Doc. No. 20) is **DENIED**;

3. This matter is remanded to the Commissioner for further proceedings pursuant to 42 U.S.C § 405(g) (sentence four), consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 25, 2022                                 *s/ Becky R. Thorson*
                                                    BECKY R. THORSON
                                                    United States Magistrate Judge